On an appeal from a decree of the Superior Court of Chancery for the Richmond District, pronounced in May, 1807, whereby the bill of the complainants was dismissed. i
Patty and her children Daniel and Anderson filed their bill in equity, stating that they were formerly the slaves of John Timberlake, and were sold after his death for the purpose of raising funds to satisfy his debts; that Prances Timberlake, his widow, became the purchaser, and emancipated *them by her will, of which she appointed B. H. Hil-liard, Richard Hilliard, Mary Day and Francis Hilliard, executors and executrix; that the said Richard Hilliard, administrator of John Timberlake and executor of Frances Timberlake, had sold the complainants to Colin. The prayer of the bill is for the benefit claimed under the will, and for general relief.
The complainants by amendment to their bill stated that Frances Timberlake, by her will, charged her lands with the payment of her debts; that those lands were in the possession of B. H. Hilliard, (whom they prayed to be made a party,) and sufficient to refund the price paid by Colin. Another amended bill was filed against Richardson, administrator, with the will annexed of Frances Timberlake, praj’ing for an account of her estate.
To the original bill Colin answers, that Frances Timberlake died more indebted than she was worth, and therefore could not emancipate the complainants; that Patty and Daniel were sold by the sheriff to satisfy an execution against John Timber-lake’s estate, and Richard Hilliard, who is not executor of the said Frances Timber-lake, became the purchaser, of whom the defendant, at the request of the complainant Patty, bought her and her son Daniel; that the complainant Anderson had been born since the said purchase; that the complainants were exposed to sale by B. H. Hilliard and Frances Timberlake, executor and executrix of John Timberlake, and the said Frances Timberlake nominally became the purchaser, but no money was paid for them, so that she still remained a trustee for the creditors of John Timberlake.
After the filing of the original bill, and before B. H. Hilliard was made a party, his deposition was taken. He proved that Frances Timberlake became the purchaser of the complainants Patty and Daniel, but paid no money for them; that he had paid a large sum for John Timberlake’s estate, and that the complainants were sold under an execution of Richard Hilliard’s against the said estate, all of which, including sundry other negroes, had been sold, and was not sufficient to pay all the claims against it. His answer to the amended bill making him a party, and stating that he was in possession of the land d.evised by Frances Timberlake for the payment of her debts, admitted the fact; but said, that the lands were fairly and publicly sold for cash, at auction, and Richardson became the purchaser, *at 951. of whom he bought them at ' the price of 1001; and that the whole of John Timberlake’s estate both real and personal was not sufficient to pay his debts.
The answer of Richardson to the amended bill filed against him, stated that he had fully administered the assets of Frances Timberlake according to an account annexed ; which was accepted by the complainants’ counsel, instead of an account before commissioners.
In the progress of the cause the Court of Chancery directed an account of the value of Frances Timberlake’s lands to be taken by commissioners, who reported that the lands given her by her husband John Tim-berlake were worth 2501.
Several depositions were taken, which proved the sale of the complainants by John Timberlake’s executors, and the purchase by Frances Timberlake, who does not appear to have qualified to the will, though she was named executrix. There was no proof that any money was paid by her; and most of the witnesses express their belief that the negroes were sold to prevent an execution from being levied on them, and for the sole purpose of keeping them together. It appeared from sundry copies of judgments filed as exhibits in the cause, that the estates, both of John Timberlake and Frances Timberlake were much involved in debt. Mrs. Timberlake, however, in her will, speaks of a debt due to her from B. H. Hilliard, and directs that it shall be applied, when collected, to discharge the very claim under an execution for which the complainants were sold: she also mentions other monies due to her, and disposes of her estate in such a manner as to induce a belief that she was not conscious of being in debt. Her will bears date the 6th of April, 1794: and, on the 30th of November, in the same year, B. H. Hilliard obtained from her a receipt in full of all demands on account of the estate of John Timberlake her late husband.
In the answer of B. H. Hilliard to the amended bill charging him with being in possession of the land devised by Frances Timberlake for the payment of her debts, he enters into a very lengthy detail, to shew that the sale of her land by Richardson was a fair one; he states that the situation of her estate imperiously demanded that it should be sold for cash; that it was publicly advertised at several places, and *233 purchased by Richardson, her administrator with the will annexed, at 951. ; from whom he purchased it at 1001. As an evidence of the fairness of the sale, *and the publicity which was given to the transaction, one advertisement was •proven to have been set up at a meeting house ; in which advertisement Richardson, on the 25th of November, 1797, notified the sale of the land at Allen’s tavern, (stated by B. H. Hilliard, in his answer, to have been a very public place, about live miles from the premises,) on the fifth of December following : this advertisement specified that the land would be sold for the purpose of paying the debts due from the estate of Prances ’Timberlake, and that the terms would be made known on the day of sale. It was from the answer of B. H. Hilliard alone, that in this cause, those terms were disclosed : the sale appearing, from that answer, to have been for cash. A receipt from B. H. Hilliard, as executor of John Timberlake, to Richardson as administrator, with the will annexed of Prances Tim-berlake, for the sum of 951. (the price at which the land was struck off to Richardson,) expressing the application of the money, in payment of a debt, for which he (Hilliard) was bound, as the surety of Prances Timberlake, was produced in evidence.
The Court of Chancery, on a hearing, dismissed the bill, and the complainants appealed to this Court.
Randolph for the appellants.
Call for the appellees.
Por the appellants it was said, that, although this was a claim for freedom, yet the cause would be discussed as if it were a mere question involving the right of property ; but the relief must be different, and according to the subject matter. The appellants have made out a case which clearly proves a conspiracy on the part of the representatives of John and Prances Timber-lake to deprive them unjustly of their freedom. Sufficient funds were provided by Mrs. Timberlake to ensure the emancipation of her slaves. Besides the credits mentioned in her will, she directed her lands to be sold, if necessary, for the purpose of paying her debts. These lands, reported by commissioners appointed by the High Court of Chancery to have been worth 25017 were sold b3' Richardson, her administrator with the will annexed, for cash, after advertising them for ten days only, and purchased by him at 951. from whom they were bought by B. H. Hilliard at 1001. The relief contended for, is, that there be an account of 'x'the estate of Mrs. Timberlake taken, and that the lands be resold; and, if there shall be enough to pay Colin the amount which he paid for the negroes, they shall be emancipated. There is an account filed shewing that her estate was fully administered; but, still, there is a sufficient fund in the land. Admitting that the slaves were sold by B. H. Hilliard, as the executor of John Timberlake, and purchased by Mrs. Timberlake for the mere purpose of protecting them from execution, still Hilliard, being a party to the fraud, cannot be relieved. The receipt obtained by B. H. Hilliard from Mrs. Timberlake, is, of itself, an evidence of fraud. Her will is dated in April, 1794, and the receipt in November, 1794, probably when she was on her death bed. She releases to him, in character of executor of John Timberlake; but not a word is said about the slaves. He was indebted to her, and took this release to exonerate him. The negroes were in her possession, at the very moment of the release, and, if it had been contemplated, (as he pretends,) that her right to them should be relinquished, surely something would have been said about them. Although it is generally true that an executor may sell a specific legacy, and convey a title to the purchaser, yet the rule only applies where compensation can be made in monej'. Here it cannot be made, because liberty is in question.
On the part of the appellees, it was contended that the appellants were not entitled to relief: that Mrs. Timberlake, who had affected to emancipate them, had no title, the sale being merely fictitious and fraudulent, and intended to protect the property from the lawful creditors of John Timber-lake. This was apparent from the whole of the testimony; and, in the language of a majority of the Judges in Austin’s administrator v. Winston’s executrix, (a) it exhibited such a combination to defeat creditors as rendered the whole transaction void. There is no evidence to shew that Mrs. Timberlake paid any thing on account of this pretended purchase; and, even if she had, it would have been paid out of the estate of her husband; for it does not appear that she was entitled to any other. Several circumstances shew that the sale was merely fictitious: there is no charge in the administration account for those slaves: Hilliard, after the death of Mrs. Timberlake, caused them to be sold, as if his title as executor had never been divested ; there is no proof that either security was given or any money paid for the amount.
*As to Colin, the transaction was res inter alios acta, and cannot affect him. The property of a testator found in the possession of his executor may be taken in execution by creditors to satisfy their claims; nor is the property changed by a sale made by the executor, at which he becomes the purchaser, unless, after a fair experiment made, it is struck off to him as the best bidder, and he actually pays the money for the benefit of the estate. Colin, being a bona fide purchaser from a person who bought the negroes at a sheriff’s sale, comes within the principle of the 3d resolution in Matthew Manning’s case,(b) and his possession ought not to be disturbed. In this case a third person has acquired a right, and no fund can be created for the redemption of the slaves; which distinguishes it from the case of Abbey & Wood-liff, in this Court, (c)
But if Mrs. Timberlake never qualified as executrix, it would not influence the argument; because it was a combination between the executor and one named an executrix, who was also residuary legatee, *234 to defraud the creditors. Besides, the Court, by a posterior act, cannot compensate the purchaser from the sheriff. Suppose Colin gave 501. for the slaves, and they are now worth 3001. he has a right to go back to the vendor for the increased value; how can that vendor come on the public officer? will the Court involve the sheriff in the payment of the increased value, when he acted legally in making the sale?
Whatever claims Mrs. Timberlake had, were extinguished by the release of November, 1794; the appellants have, consequently, no right to an account. Suppose Mrs. Timberlake were alive, and to bring a bill against Hilliard, would not that release be a bar? If she could not demand an account against the release, those claiming under her cannot. There is no evidence that the release was fraudulent^' obtained, as has been suggested.
If Colin has acquired a legal right under the sheriff’s sale, there is a total inability in the appellants to bring a suit, because they are slaves. It may be said that suits in forma pauperis are daily brought; but it is because the plaintiffs are free.
Another reason why an account should not be directed, is, that an administration account was not called for in the Court of Chancery. If a party will not ask for an account from a Court which has power to grant it, shall he come up to this Court and demand a reversal of the decree? But what good would be effected by directing an ^account, when the whole record shews the estate was insolvent? It is said that a fund rich enough for every object is in the hands of Hilliard. How does this arise? John Timberlake, overwhelmed in debt, devises a little piece of poor land to his wife; she undertakes to bequeath a great many specific legacies; she, in truth, gives away the property of her testator; emancipates her slaves, and says that if there be not estates enough to pay their debts, this land shall be sold. Every specific legatee is equally entitled; for they are all volunteers. If she never paid for this property, then she owed the estate of John Timberlake; she owed Hil-liard and others. These debts could only be paid by the sale of the land; and, if there were any thing left, no legatee could be exclusively entitled to the benefit of it: all that could be done, would be to pay them pro rata.
The land was publicly advertised, fairly sold, and purchased by Richardson, who afterwards sold to Hilliard. The commissioners have, indeed, said it was worth more; but this is mere opinion, and not expressed in the presence of the parties. That report does not bind the appellees, because it was made before Hilliard was a party to the cause.
If these people have a right to an account, it is of the administration on Mrs. Timber-lake’s estate alone. They have accepted the account of her administrator, in the same manner as if it had been made before a commissioner. This account embraces the land and the whole estate. Mrs. Timberlake died insolvent. She had nothing but what she received from John Tim-berlake’s estate. If the sale be not a good one, the slaves are liable to the creditors; and, if good, she is still indebted for them. But the creditors have acquired legal rights; and there is no power in the Court to take them away.
Wednesday, November 25. JUDGE TUCKER presented the following decree, which, he said, had been unanimously agreed to, and contained his own sentiments: “It appearing that a considerable number of the slaves of John Timberlake, deceased, of whom the plaintiffs were a part, were possessed by his widow and residuary legatee, Frances Timberlake, as of her own proper slaves, more than five years before her death, either under an actual sale thereof to her by the defendant B. H. Hilliard, the executor of the said John Timberlake, or otherwise by the assent and consent of the ' said executor; *by which transaction, if the same were fair and bona fide made between .the parties, those slaves were not thereafter liable at law to be taken in execution to satisfy any debt recovered against the said executor on account of his testator: yet, as they were originally liable for the payment of all the just debts of that testator; and, if there were any fraud in the sale or transfer from his executor to his widow and residuary legatee; or, if delivered to her in satisfaction of the residuary legacy bequeathed to her by her deceased husband, they might still be made liable to the payment of such debts; and, as the complainants have come into a Court of Equity for relief; and since they are moreover liable for the payment of alt the just debts of the said Frances Timber-lake ; and the debt due to the defendant Richard Hilliard, for satisfaction of which the complainants were taken in execution, being one of those debts of the said John Timberlake for which they were originally liable, and which the said Frances had probably undertaken and thought herself bound to pay, as appears by her will; the seizure and sale of the complainants, made by the sheriff to satisfy the judgment obtained by the said Richard Hilliard, ought not to be impeached: there is therefore no error in so much of the Chancellor’s decree as dismisses the complainants’ bill as to that defendant. But, inasmuch as no inventory, appraisement, or account of sales, nor any account of debts, if any, due to the said John Timberlake, hath been exhibited by the said B. H. Hilliard, his executor, nor any satisfactory account of his administration thereof rendered by him; nor any inventory, appraisement, account of sales, or satisfactory account of the administration of the personal estate of the said Frances Timberlake, nor any account of debts due by or to her, having been rendered or appearing; nor any satisfactory account of the dealings, and transactions between the said B. H. Hilliard as executor of the said John Timberlake, or in his own behalf and right, and his sister the said Frances Timberlake, being rendered or appearing, whereby this Court can be enabled to judge how far the estate of the said Frances may be liable in equity for the debts of her deceased husband, or at law for her own proper debts; and the sale of the lands of the said Frances, though pretended *235 o have been made for ready money, because the exigencies of her estate so ur-ently demanded and required it,’ appearing from the exhibits filed in *this cause, to have been made some time before any judgment was ob-ained against her estate by any person whatsoever; and the said B. H. Hilliard laving become the purchaser thereof from he administrator of the said Prances, by whom the same was exposed to sale, and to whom it is alleged to have been struck out .t a price very inferior to the valuation hereof made by commissioners appointed >y the High Court of Chancery to value the iame; after a notice of ten days only, pub-ished, as alleged, at a single place of wor-ihip, and not notified in the public papers, >r at any other place, or in any other man-íer, as far as appears to this Court; that ¡ale ought not to have been considered as ralid without further inquiry into the fair-ress and propriety of that transaction ; and, :herefore, that there is error in so much of :he said decree as dismisses the plaintiff’s nil as to the other defendants in this suit — therefore the same is so far reversed and annulled; and this Court pro-¡eeding to make such decree as the said Court of Chancery ought to have nade, is of opinion that an account ought :o be taken of the goods and chattels, rights md credits, of the said John Timberlake, ieceased, and of the administration thereof >y the said B. H. Hilliard; (who appears ay his own deposition and acknowledgment to have qualified as his executor, and to rave taken upon himself the burthen of executing his will;) and, more especially, of the value of the slaves sold or otherwise transferred and delivered to the said Prances his widow and residuary legatee by the said jxecutor, and also of the prices at which they were struck out to her, at the sale, or pretended sale, thereof made by the said B. H. I-Iilliard; and whether such sale was fraudulently, or bona fide made between those parties; and upon what terms and ¡onditions said sale was made; and whether the said Prances in consequence of such transaction hath paid or made herself personally liable to the said executor, or to the creditors of the said John Timberlake, or my and which of them, for debts due from her said deceased husband, by reason of such purchase, or delivery of the said slaves to her : and that a like account of the slaves, and personal estate, of the said Prances, at the time of her death, and of the rents, issues and profits of her lands, and of those slaves, and into whose hands they have come, either immediately on her decease, or since, be likewise taken, and that a fair and just settlement of all accounts, ^dealings and transactions between the said B. H. Hilliard as executor of the said John Timberlake, or in his own right and account, with the said Prances, from the death of the said John to the death of the said Prances, be likewise taken; whereby it may be ascertained whether the said B. H. Hilliard was the debtor of the said Prances, as by her will is suggested, or she was indebted to him: and that the lands mentioned in the last will and testament of the said Prances, if it shall appear that the same were not properly exposed to sale and fairly sold by her administrator, be again exposed to sale at public auction, after due notice, in such manner, and on such terms, as to the Superior Court of Chancery for the Richmond District 'shall seem most likely to produce the highest price: and, if, after the due execution of the premises, it shall appear to the said Superior Court of Chancery that there is sufficient of the estate of the said John Timberlake, and of the said Prances his widow, to satisfy and pay all the just debts, as well of the latter as of the former, without recourse to the value of the complainants, or to a sale of them for those purposes, that then the said complainants be considered and declared free, reserving, nevertheless, leave to the other slaves who were objects of the benevolence of the said Prances, in her will, to become parties plaintiffs to this suit, and to assert an equal claim to their redemption and emancipation, and to have the equal benefit of the estates of the said John Tim-berlake and Prances Timberlake in accomplishing this purpose: If it cannot be wholly accomplished, that then the whole of the said slaves so claiming their freedom, and applying to be parties plaintiffs within a reasonable time to be limited by the said Court of Chancery, be sold for such term of years as may be sufficient to raise the adequate fund; and, if the whole value of them all be necessary, that then the bill be dismissed. And that, in the event of an adequate fund being found as aforesaid, and of the complainants being declared free, there be paid to the adminis-tratrix of Didier Colin fifty pounds, (the price by him paid for the said complainants,) with five per cent, interest thereon from the time the same was paid by him; and that similar recompense in the like event be made to the purchasers or owners of the other slaves who were objects of the said E'rances’ benevolence in her will, if there be sufficient of her estate for that and the other purposes before mentioned; subject, however, to any '^particular equity which may be established against them or any of them: and, in case there shall remain any surplus of the estate of the said Frances after the execution of the premises, that the same be distributed according to her will. But nothing herein contained is to be construed to the prejudice of any other specific legatee named in the will of the said Prances.”

 Ante, 33.

Cb) 8 Co. 96, b.

 MS.